GROVER B. KELSAY and LOIS E. KELSAY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Kelsay v. Commissioner
Docket Nos. 1471-71, 1472-71, 1473-71, 1474-71, 1475-71, 1476-71, 1477-71.
United States Tax Court
T.C. Memo 1972-249; 1972 Tax Ct. Memo LEXIS 7; 31 T.C.M. (CCH) 1232; T.C.M. (RIA) 72249; December 21, 1972, Filed Charles P. Duffy and Joyle C. Dahl, for the petitioners. Lee A. Kamp, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent has determined deficiencies in the Federal income tax returns of the petitioners as follows: Docket No.
Petitioners
Year
Amount
1471-71
Grover B. and Lois E. Kelsay
1965
$ 3,929.00
1966
12,661.00
1472-71
Robert A. and Barbara K. Graham
1966
7,158.00
1473-71
Dan A. and Marilyn B. Graham
1965
973.00
1966
6,780.00
1474-71
Raymond F. and Ida D. Hills
1965
3,724.00
1966
12,678.00
1475-71
Lloyd A. and Shirley K. Leabo
1965
1,036.00
1966
7,588.00
1476-71
Frank A. and Mildred J. Graham
1965
1,048.00
1966
2,986.00
1477-71
John H. and Velva M. Leabo
1965
2,390.55
1966
2,994.00
*8 The above-entitled proceedings were consolidated for purposes of trial and opinion. Concessions and agreements having been made by the parties, the sole issue for decision in this case is whether petitioners owned, or had a contract right to cut certain timber on the lands of Weyerhaeuser Timber Co., within the meaning of section 631(a), [2] for a period of more than 6 months prior to the taxable year in which the timber was cut. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitionrs Grover B. Kelsay and Lois E. Kelsay are husband and wife who filed their joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue for the District of Oregon. At the time of the filing of the petition herein, they legally resided in Pleasant Hill, Oregon. Petitioners Robert A. Graham and Barbara K. Graham are husband and wife who filed their joint Federal income tax return for the calendar year 1966 with the district *9 director of internal revenue for the District of Oregon. At the time of the filing of the petition herein, they legally resided in Pleasant Hill, Oregon. Petitioners Dan A. Graham and Marilyn B. Graham are husband and wife who filed their joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue for the District of Oregon. At the time of the filing of the petition herein, they legally resided in Pleasant Hill, Orgeon. Petitioners Raymond F. Hills and Ida D. Hills are husband and wife who filed their joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue for the District of Oregon. At the time of the filing of the petition herein, they legally resided in Pleasant Hill, Oregon. Petitioners Loyd A. Leabo and Shirley K. Leabo are husband and wife who filed their joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue for the District of Oregon. At the time of the filing of the petition herein, they legally resided in Sparks, Nevada. Petitioners Frank A. Graham and Mildred J. Graham are husband and wife *10 who filed their joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue for the District of Oregon. At the time of the filing of the petition herein, they legally resided in Jasper, Oregon. Petitioners John H. Leabo and Velva M. Leabo are husband and wife who filed their joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue for the District of Oregon. At the time of the filing of the petition herein, they legally resided in Pleasant Hill, Oregon. At all times during the years 1965 and 1966, Grover B. Kelsay, Robert A. Graham, Dan A. Graham, Raymond F. Hills, Lloyd A. Leabo, Frank A. Graham, Mildred J. Graham, and John H. Leabo were the partners in Hills Creek Lumber Co., wich was engaged in logging timber and manufacturing lumber at its mill located in Jasper, Oregon. During the years 1965 and 1966, respectively, the partnership interests were as follows: 1965
1966
Grover B. Kelsay
22 %
22 %
Robert A. Graham
5 %
15-1/3%
Dan A. Graham
9-1/2%
15-1/3%
Raymond F. Hills
22 %
22 %
Lloyd A. Leabo
9-1/2%
15-1/3%
Frank A. Graham
7-1/2%
2-1/2%
Mildred J. Graham
7-1/2%
2-1/2%
John H. Leabo
17 %
5 %
*11 Prior to 1965, the partnership had duly elected to treat the cutting of timber by it under the provisions of section 631(a) of the Internal Revenue Code. Any timber cut by the partnership during the years 1965 and 1966, which otherwise qualified for treatment under section 631(a), was cut for sale on its own account or to use such cut timber in the partnership's trade or business. Beginning sometime in 1955, Hills Creek Lumber Co. (hereinafter referred to as "Hills Creek") entered into negotiations with Weyerhaeuser Timber Co. (hereinafter referred to as "Weyerhaeuser") for the exchange of certain cutover timberland in Lane County, Oregon, owned by Hills Creek. It was ultimately agreed by the parties that, in consideration for the conveyance by Hills Creek of its cutover land to Weyerhaeuser, Hills Creek would receive conveyance of a certain tract believed to have standing 6,500,000 board feet of quality old-growth Douglas fir timber, together with the right to cut an additional 8,500,000 board feet of such timber on nearby lands owned by Weyerhaeuser. As a result of such negotiations, on August 27, 1957, Hills Creek conveyed the 3,877.25 acres of its cutover *12 timberland in Lane County, Oregon, to Weyerhaeuser. At about the same time, Weyerhaeuser conveyed to Hills Creek 78.96 acres of its timberland located in Section 14, Township 15 South, Range 1 East, in Lane and Linn Counties, Oregon. In addition, as part of the consideration of the conveyance of the 3,877.25 acres, on January 27, 1958, Weyerhaeuser also granted Hills Creek an exclusive and irrevocable option for a term ending on December 31, 1965, to acquire timber located on a certain 107.75 acres of land located in Section 14, Township 15 South, Range 1 East, in Lane and Linn Counties, Oregon, at a price of $60 per thousand board feet. The option did not specify the estimated board feet of Douglas fir timber contained in the 107.75 acres, but the parties assumed that the acreage would contain 8,500,000 feet of quality Douglas fir timber. As a result of miscalculations on the part of Weyerhaeuser, it developed that the land conveyed to Hills Creek did not contain the requisite 6,500,000 board feet of quality Douglas fir. In recognition of this, Weyerhaeuser granted additional rights to Hills Creek, which were exercised and are not involved in this proceeding. There was also some *13 question whether the designated acreage covered by the option of January 27, 1958, would yield the agreed upon volume of timber. Accordingly, it was agreed that Hills Creek would relinquish its option and be permitted to select a different tract. In exchange for the option of January 27, 1958, Weyerhaeuser granted an exclusive and irrevocable option to Hills Creek, dated November 23, 1964, to be exercised by December 31, 1966, to cut Douglas fir timber located in Sections 19 and 20, Township 17 South, Range 2 East of the Willamette Meridian. This option agreement was identical to the January 27, 1958 option agreement, except that the legal description of the land from which the timber was to be removed was different, and the date by which the option had to be exercised was extended from December 31, 1965 to December 31, 1966. On July 28, 1965, Hills Creek advised Weyerhaeuser by letter that: We hold an option to buy timber from your firm, as is evidenced by such a paper in our hands. This option was signed by your Mr. George H. Weyerhaeuser for your company, under date of November 23rd, 1964. In an amendment to this agreement, we may exercise option rights any time this year *14 on 30 days notice to your firm; and we may invoke option privileges more than the once, as specified in error in the agreement. Pursuant to such understanding, we wish to invoke our option privilege for 4,000,000' at this time, and this letter is to constitute the 30 days notice of our such intent. * * * It is presently our intention to invoke our option on the remaining 4,500,000' at a later date of this year; and as a result, be prepared to log out all of the option timber prior the end of the year of 1966, at which time our rights expire. During August 1965, Weyerhaeuser prepared the (1) "Pay as Cut Timber Sales Contract" for the removal of 4,000,000 board feet of Douglas fir timber from Sections 19 and 20, Township 17 South and (2) service logging contract for the delivery of hemlock, cedar and Douglas fir culls from the same area. The aforementioned contracts were transmitted to Hills Creek by letter, dated August 30, 1965, for the signatures of officials of Hills Creek. The "Pay as Cut Timber Sales Contract," dated August 25, 1965, provided in part as follows: (1) Hills Creek to remove approximately 4,000,000 feet of timber by December 31, 1966. (2) The timber to *15 be removed from Sections 19 and 20 of Township 17 South, Range 2 East of the Willamette Meridian. (3) Title to the timber to pass to Hills Creek when the timber is removed from the contract area. (4) Notwithstanding the time of passage of title, operator shall bear risk of loss or damage to covered products other than loss or damage caused by fault of owner. (5) The timber, its grade to be No. 3 sawmill log or better, to be paid at the rate of $60 per thousand board feet. On January 26, 1966, Hills Creek entered into a supplemental agreement with Weyerhaeuser to provide for an additional 4,500,000 board feet of Douglas fir timber to be covered by the "Pay as Cut Timber Contract," dated August 25, 1965. On April 7, 1966, the cutting area from which the Douglas fir timber was to be removed, was increased by adding other parts of Sections 19 and 20, Township 17 South, Range 2 East of the Willamette Meridian. Hills Creek cut the 8,500,000 board feet of Douglas fir timber as follows: Year
Footage
1965
3,086,120
1966 5,425,820
Total 8,511,940 OPINION Section 631(a) grants to the taxpayer the election to treat the cutting of timber for sale or for *16 use in the taxpayer's trade or business as a sale or exchange of a capital asset providing that the taxpayer either has owned such timber or has held "a contract right to cut" such timber for a period of more than 6 months before the beginning of the taxable year. [3] The sole question presented is whether Hills Creek held "a contract right to cut" the 8,500,000 board feet of Douglas fir timber for a period of more than 6 months before the beginning of the taxable year in which Hills Creek cut such timber. In other words, when did Hills Creek acquire from Weyerhaeuser the right to cut 8,500,000 board feet of timber? *17 In the sequence of events, Hills Creek and Weyerhaeuser entered into an agreement for the exchange by petitioner of certain cutover acreage for a plot of lesser acreage believed to have 6,500,000 board feet of matured timber, together with the right to cut an additional 8,500,000 board feet of timber at a price of $60 per thousand. The terms for the exchange were agreed upon verbally not later than July 1956. Pursuant to that agreement, on August 27, 1957, Hills Creek conveyed to Weyerhaeuser its cutover land and received a conveyance from Weyerhaeuser of the smaller tract which was supposed to have 6,500,000 board feet of timber. It subsequently developed that the tract would not yield timber of the quantity and quality agreed upon by the parties, so that Hills Creek was given the right to cut elsewhere up to the total of 6,500,000 board feet. As a part of the same transaction, on January 27, 1958, Weyerhaeuser also granted Hills Creek the exclusive sive and irrevocable option for a term ending December 31, 1965, to cut the timber on certain designated acreage believed to yield 8,500,000 board feet of Douglas fir at a price of $60 per thousand board feet. Subsequently, the petitioner *18 went on said lands and concluded that the tract would not yield the quantity and quality of timber agreed upon by the parties. As a result, in exchange for the earlier option, on November 23, 1964, Weyerhaeuser granted an option to Hills Creek to cut timber on a different tract. Except for the description of the property, the terms and conditions were identical with the earlier option. Hills Creek duly exercised its rights under the option cutting therefrom a total of 3,086,120 board feet during the taxable year 1965 and 5,425,820 board feet during the taxable year 1966. Before undertaking to cut such timber, the option provided for the fulfillment of certain conditions by Hills Creek. These terms and conditions, to which Hills Creek was obligated to agree before being permitted to enter upon the lands of Weyerhaeuser to cut timber, were embodied in a standard form of contract used by Weyerhaeuser entitled a "Pay as Cut Timber Sales Contract." Relying on this, respondent argues that all Hills Creek had prior to the entitled contract was an option to obtain a contract right to cut rather than the contract right itself. The respondent would commence the running of the 6-month period *19 required in the statute from the date of the contract to cut rather than the date of the option to cut. Accordingly, respondent contends that the 6 months did not begin to run until the date of the "pay as cut" contract. In taking this position, the respondent fails to give effect to the distinction between "a contract right to cut" as used in section 631(a) and "a contract to cut." [4]
The characterization of the initial right to cut granted to Hills Creek as an "option" was adopted by Weyerhaeuser to distinguish the initial contract or agreement from the cutting contract which Weyerhaeuser required before permitting a logger to cut timber on its lands. The intention of Weyerhaeuser as described by Mr. Daniel C. Smith, its vice president and general counsel, was as follows: Q Why did you call it an option agreement? A I thought that of it I guess, less artfully than now appears to have been the case, it is just an agreement. They had a right to cut that timber at any time and we called it an option agreement because we were concerned about--well, we had two considerations. One, we wanted some notice to make sure that if we had logging operations *20 going on anywhere in the vicinity we could schedule--well, we could avoid any congestion on the roads. We could ask them to schedule their logging or we could reschedule our logging so as to avoid two shows going on in the same area. They are very inadequate roads. Secondly, whenever we, and we had other instances, when we grant to somebody the right of this sort we want to make sure that when they go in and start operating that they had an operating agreement that fairly clearly sets forth their obligations with respect to fire prevention, with respect to insurance, and usually these operating agreements have the provision for either a bond or a security deposit. A right to cut is nothing more than an "option." It implies no obligation on the part of the holder of such right. Section 631(a) does not require that the taxpayer seeking to claim its benefits have a binding contract to cut timber which is in effect for a period of 6 months prior to the taxable year. All the statute requires is that the taxpayer have an enforceable right, exercisable at its option, to cut such timber. Hills Creek clearly had that right with respect to the 8,500,000 board feet either at the time it furnished *21 the consideration which formed a part of the original agreement, namely, August 27, 1957, or in any event not later than January 27, 1958, when Weyerhaeuser granted the petitioner an option to elect to go upon a designated tract believed to yield 8,500,000 board feet of timber and to cut such timber upon appropriate notice to Weyerhaeuser and the assumption of the customary obligations of any logger permitted to cut timber on Weyerhaeuser's land. The contract by which the petitioner obtained the right to cut such timber came into being at that time. What transpired subsequent thereto was merely the implementation of that right. Decisions will be entered Under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Robert A. Graham and Barbara K. Graham, docket No. 1472-71; Dan A. Graham and Marilyn B. Graham, docket No. 1473-71; Raymond F. Hills and Ida D. Hills, docket N. 1474-71; Lloyd A. Leabo and Shirley K. Leabo, docket No. 1475-71; Frank A. Graham and Mildred J. Graham, docket No. 1476-71; and John H. Leabo and Velva M. Leabo, docket No. 1477-71.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. SEC. 631. GAIN OR LOSS IN THE CASE OF TIMBER, COAL, OR DOMESTIC IRON ORE.
(a) Election to Consider Cutting as Sale or Exchange.--If the taxpayer so elects on his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than 6 months before the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the taxpayer. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. If a taxpayer makes an election under this subsection, such election shall apply with respect to all timber which is owned by the taxpayer or which the taxpayer has a contract right to cut and shall be binding on the taxpayer for the taxable year for which the election is made and for all subsequent years, unless the Secretary or his delegate, on showing of undue hardship, permits the taxpayer to revoke his election; such revocation, however, shall preclude any further elections under this subsection except with the consent of the Secretary or his delegate. For purposes of this subsection and subsection (b), the term "timber" includes evergreen trees which are hore than 6 years old at the time severed from the roots and are sold for ornamental purposes.↩
4. For example, see sec. 631(b)↩.